On Rehearing.
Spencer, J.
The right of an heir in a succession is an incorporeal thing. It is an entity, a unit. It does not consist in specific interests in specific things; for when determined and ascertained by the liquidation and settlement of the succession, such things may form or constitute no part of what the right embraces. It is not true to say that the heir owns any particular part of any particular property composing the succession. You can not seize or sell'his interest in any specific thing belonging to the succession, and, therefore, you can not appraise specific and particular things in order to a sale of his hereditary right. His right of succession is in some sort indivisible. No one can seize a fraction of it. It is a single right and not an aggregation of many rights. It must be seized, appraised, and sold as a unit. For the purpose of approximating its value, the appraisers would of necessity take into consideration the value of the active mass of the succession, and, also, the passives, or debts and obligations thereof. They would thus ascertain the probable net value of the succession in globo, and fix the value, of the heir’s succession right by taking the aliquot part represented by him as heir.
As stated in our former opinion, the appraisement in this case seems-to have been made by separately valuing the heir’s interest in each of several pieces of property said to compose the succession. It is true that the appraisers then put the value of the “total undivided interest”' of the defendant heirs at a round sum of 13175. Perhaps it is the mode of reaching the conclusion as .to value which is irregular, rather than the conclusion itself, since there is a round sum declared by the appraisers to be the value of the heir’s right under seizure.
But if the seizure and appraisement be regular, under the mortgage *1070 "certificate there could be no adjudication at the price said to have been 'bid by Lagroue, $2125. The recorder of mortgages certifies as existing ■on the property seized the following mortgages “in the names of Gustave J. Freret and William P. Freret,” to wit: “ The mortgage in favor of "Theo. Lercom, act of O. de Armas, notary, dated October 26, 1870, to secure the sum of $6000, interests and costs, etc., recorded October 28, 1870.” Then another mortgage before Cuvillier, notary, in favor of Chas. Xafitte, for $8500, recorded May 4, 1872. There are, also, other antecedent mortgages and privileges certified to exist. These mortgages -are certified as having been granted not by the ancestor, as suggested by plaintiff’s counsel, but by the heirs, G. J. and rV. P. Freret.
Plaintiff’s suit, in which he attached the property in question, was not commenced till November, 1875,and his judgment and judicial mortgage were only registered November 29, 1875.
It appears, therefore, that there were operating and uncanceled upon this property two antecedent special mortgages granted by the seized debtors, and amounting to $14,500 principal. No adjudication could be made on a bid less than the amount of these prior special mortgages. C. P.
It is therefore ordered that our former decree remain undisturbed,